IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DR. ERIC BLINMAN,
*Former Director, New Mexico*
*Office of Archeological Studies,*

    Plaintiff,

v.                                                         Civ. No. 23-431 KG/JMR

GOVERNOR MICHELLE LUJAN GRISHAM,
*individually and as Governor of the*
*State of New Mexico, et al.,*

    Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint, (Doc. 26), filed November 29, 2023. Plaintiff filed his response, (Doc. 28), December 19, 2023. Defendants filed their reply, (Doc. 29), January 3, 2024. Having considered the briefing and the applicable law, the Court denies Defendants' Motion.

I.    *Background*[1]

On February 13, 2023, Plaintiff Dr. Eric Blinman was fired from his job. (Doc. 21) at 12. For 17 years leading up to his termination, Dr. Blinman served the State of New Mexico as the Director for the New Mexico Office of Archeological Studies. *Id.* at 6. Dr. Blinman alleges he was illegally fired in retaliation for his whistleblowing activity and because of his age, race, and gender. *Id.* at 13.

---

[1] The Court summarizes only those portions of Plaintiff's Second Amended Complaint, (Doc. 21), relevant to Defendants' Motion.

1

A couple of years preceding his termination—from July 2021 through sometime in 2022—Dr. Blinman made numerous requests to the New Mexico Department of Cultural Affairs (NMDCA) Cabinet Secretary, Defendant Debra Garcia y Griego, to interview, vet, and hire potential employees. *Id.* at 4, 7. These employees were to become his direct reports and would "enable him to effectively perform his job duties." *Id.* at 7. Dr. Blinman alleges Defendant Garcia y Griego was looking for justification to fire him. *Id.* By ignoring his requests, she would be able to undermine his ability to do his job, thereby providing her with the justification she needed to fire him. *Id.* at 4, 7. Believing this stonewalling constituted unlawful or improper action, Dr. Blinman reported Defendant Garcia y Griego's alleged misconduct to Defendant Ken Lucero, NMDCA's Human Resources Director. *Id.* at 8. Sometime later, Defendant Lucero reported Dr. Blinman's "first whistleblower complaint" to the New Mexico Risk Management Division (NMRMD). *Id.* However, it was not until early-to-mid January 2023—shortly before Dr. Blinman was fired—that an NMRMD retained attorney contacted Dr. Blinman to investigate his first whistleblower complaint. *Id.*

In 2022, the same year he reported his first whistleblower complaint, Dr. Blinman also reported his "second whistleblower complaint" to Defendant Lucero. He told Defendant Lucero, in confidence, that he was told a rumor: Defendant Garcia y Griego was having an inappropriate relationship with a subordinate. *Id.* Dr. Blinman believed such a rumor could negatively impact the NMDCA workplace and, if true, would be a violation of the State's code of professional conduct. *Id.* at 8–9. After telling Defendant Lucero of this rumor, Dr. Blinman appears to allege that Defendant Lucero betrayed his confidence and conveyed the substance of his second whistleblower complaint to Defendant Garcia y Griego. *Id.* at 9.

Dr. Blinman further alleges that Defendants, and specifically Defendant Garcia y Griego, retaliated against him because of his two whistleblower complaints. Indeed, after his second whistleblower complaint, Dr. Blinman contends Defendant Garcia y Griego immediately retaliated against him by initiating a "Performance Development Plan" (PDP). *Id.* He asserts this PDP falsely accused him of performance deficiencies based on his whistleblower complaints. *Id.* at 10. In addition to performance deficiencies, the PDP included an Action Plan. The Action Plan outlined respective goals and responsibilities for Dr. Blinman and Defendant Garcia y Griego. *See id.* The Action Plan also stated that Dr. Blinman was expected to substantially complete the goals outlined in the Action Plan by June 3, 2022. *Id.* (citing (Doc. 21-7)). But because June 3, 2022, "came and went with no further outcry or follow up from Defendant Garcia y Griego," Dr. Blinman claims he satisfied the expectations outlined in the Action Plan. *Id.*

Dr. Blinman claims the "final act of retaliation" occurred February 13, 2023. *Id.* at 12. On this date, Dr. Blinman received a letter of termination—allegedly without notice or cause—and was banned from his office without a "good faith, legitimate reason." *Id.* Despite the termination letter stating he was an at-will employee, Dr. Blinman asserts that he was not. *Id.* Instead, he claims his employment with NMDCA was "governed by the express and implied contract based on NMDCA Policies Nos. B-1, HR007, and HR010, to which all Defendants were bound." *Id.* at 23.

II.     *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." A complaint may survive a motion to dismiss only if it contains sufficient facts, accepted as true, to state a claim to relief that is plausible on its

3

face. *Employees' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining to survive dismissal, complaint must "state a claim to relief that is plausible on its face"). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (citation omitted).

In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted). As a result, a court "may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Id.* at 1248. Accordingly, a court should conduct its plausibility and sufficiency analyses on a case-by-case basis. *See id.* at 1248–49 (explaining complaint alleging negligence may require less factual support than conspiracy or qualified immunity action). However, "[p]laintiffs must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2023) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162–63 (10th Cir. 2011). "Allegations that are 'merely consistent with a defendant's liability' stop short of that line." *Id.* (citations omitted).

III. Discussion

In his Second Amended Complaint, Plaintiff Dr. Blinman asserts four counts against Defendants. Relevant to this Motion is Count IV—Breach of Express and Implied Contract. Defendants move to dismiss Count IV, arguing that Dr. Blinman is precluded from bringing a

breach of contract claim because he was an at-will employee. (Doc. 26) at 3–8. The Court is unpersuaded.

Generally, an at will employment contract can be terminated by either part. *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 4. However, an implied employment contract may restrict an employer's power to discharge at-will employees. *Id.* That said, as both parties note, NMSA 1978, Section 37-1-23(A) provides that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." (Doc. 26) at 3; (Doc. 28) at 4. The New Mexico Supreme Court, however, has held that an implied employment contract can also waive governmental immunity. *Garcia v. Middle Rio Grande Conservatory District*, 1996-NMSC-029, ¶ 15 (citation omitted). An implied employment contract can be based on a written term in a personnel policy manual. *Id.* Consequently, a plaintiff can overcome governmental immunity under Section 37-1-23(A) by alleging facts demonstrating that written employment policies may have constituted an implied contract.

Here, Plaintiff alleges facts suggesting that the NMDCA policies controlled his employment relationship with Defendants. Plaintiff cites, for example, NMDCA policies that apply to all employees—including Defendants. (Doc. 21) at 23. These policies include NMDCA's policy related to workplace: (1) conduct and ethics, (Doc. 21-4), (2) harassment, discrimination, and bullying, (Doc. 21-5), and (3) disciplinary action, (Doc. 21-6).[2] *See*

---

[2] Plaintiff, in his complaint, referred to and attached a number of documents, including: (1) NMDCA's Code of Ethics, (Doc. 21-4), (2) NMDCA's policy Prohibiting Harassment, Discrimination and Bullying in the Workplace, (Doc. 21-5), and (3) NMDCA's policy regarding Disciplinary Action, (Doc. 21-6). Because these attachments are central to Plaintiff's claims and their authenticity is not disputed, the Court may consider them as part of Plaintiff's complaint. *See Hampton v. root9B Tech.*, 897 F.3d 1291, 1297 (10th Cir. 2018) (explaining a court may consider documents referred to in the complaint without converting a motion to dismiss into a motion for summary judgment "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.")

5

(Doc. 21) at 23–24.  Among other things, these policies protect employees against retaliation, (Doc. 21-5), and provide guidelines for supervisors to apply to discipline employees.  (Doc. 21-6) at 6 ("Supervisors are required to apply discipline in a fair and equitable manner, for just cause to all employees under their supervision.").  Thus, taking all well-pled facts as true and making all reasonable inferences in favor of Plaintiff, the Court determines a fact issue exists as to whether the written policies constituted an implied contract, thereby waiving immunity under Section 37-1-23(A).  Plaintiff has therefore alleged sufficient facts to maintain his Breach of Express and Implied Contract claim.

*IV.*   Conclusion

For the foregoing reasons, the Court denies Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE