## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DR. ERIC BLINMAN,

                Plaintiff,

v.                                      Case No. 1:23-cv-00431-KG-JMR

GOVERNOR MICHELLE LUJAN GRISHAM, *et al.*,

                Defendants.

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GOVERNOR MICHELLE LUJAN GRISHAM'S MOTION FOR PROTECTIVE ORDER

**COMES NOW** the Plaintiff, by and through his counsel, Merit Bennett of The Bennett Law Group, LLC, and hereby submits *Plaintiff's Response in Opposition to Defendant Governor Michelle Lujan Grisham's Motion for Protective Order* [Doc. 76], and, as grounds therefor, states:

### BACKGROUND

1.      The subject lawsuit is brought on the basis of the legality and legitimacy of the termination of Plaintiff, Dr. Blinman's employment as the Director of the State of New Mexico Office of Archeological Studies Division.

2.      Plaintiff Dr. Blinman has asserted causes of action in his complaint for gender, age and race discrimination and illegal retaliation in violation of the United States Civil Rights Act of 1964 and the New Mexico Human Rights Act; for violation of the New Mexico Whistleblower Protection Act; and for bad faith breach of New Mexico Department of Cultural Affairs (NMDCA) Policy No. HR007 and of Plaintiff's employment contract with the State of New Mexico.

3.      Individual Defendants named in the action herein are Governor Michelle Lujan Grisham, NMDCA Cabinet Secretary Garcia y Griego, Deputy Secretary Michelle Gallagher Roberts and State Director of Human Resources Ken Lucero.

## ARGUMENT

4.    Dr. Blinman's illegal termination was accomplished by his superiors, following whistleblower complaints made through State Director of Human Resources Ken Lucero, under the instruction of Defendant Cabinet Secretary Garcia y Griego and carried out by Deputy Secretary Gallgher-Roberts, which Plaintiff alleges was carried out with discriminatory and/or improper motives, in violation of Plaintiff's state and federal civil and whistleblower rights and in breach of Plaintiff's contract of employment with, and the employment policies of, the State of New Mexico.

5.    Said termination went unchecked by Defendant Governor Lujan Grisham in completed disregard of the duties assigned to her position in accordance with the New Mexico Constitution and reiterated by the Secretary of State its public website, as follows:

> New Mexico Constitution
> Article V - Executive Department
> § 4 Governor's executive power; commander of militia.
> Universal Citation: NM Const art V § 4
>
> **"The supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed**. ..."
>
>  and
>
> Governor's Duties | Maggie Toulouse Oliver - New Mexico Secretary of State
>
> **"The Governor of New Mexico holds the supreme executive power of the state and sees that laws are faithfully executed."**

6.    Plaintiff maintains that the Governor's executive oversight duties extend to ensuring that state employees' civil rights guaranteed under the laws are not violated.

7.    Plaintiff further maintains that the Governor failed to exercise these oversight duties in good faith and thereby failed to prevent or reverse the personally motivated, patently illegal and

bad faith termination of Dr. Blinman, executed by co-Defendants Garcia y Griego and Gallagher Robert in violation of Dr. Blinman's civil, statutory, contract and common law rights.

8.     With respect to Dr. Blinman's claims, the Governor had a statutory duty of oversight which was triggered into action by Dr. Blinman's highly-publicized termination that was unquestionably brought to the Governor's imminent attention by members of her administration and by numerous public news outlets across the state.

9.     There was overwhelming public support for Dr. Blinman in opposition to his termination which called into question the legitimacy of Dr. Blinman's firing and the wisdom of retaining Garcia y Griego as the Director of the Department of Cultural Affairs, which demanded that the Governor exercise the full measure of the oversight authority available to her office - to, at the very least, order an investigation into the justification for Dr. Blinman's publicly-opposed termination.

10.     Nearly 200 prominent professionals, leaders and members of our statewide community, including former members of state government, signed a letter made to the Governor "tacitly demanding" the Governor's reversal/investigation of Dr. Blinman's termination and her withdrawal of the re-nomination of Dr. Blinman's persecutor, Defendant Garcia y Griego, to serve another term as Cabinet Secretary. *See* Motion to Compel Deposition, **Exhibits D** and **E** [EFC 66-4 and 66-5].

11.     The Governor was being asked by her constituents, the citizens of New Mexico, to perform her statutory duty of oversight and investigate, and reverse if necessary, the potentially illegal termination of a highly respected and publicly honored servant of our state government. Therefore, the Governor well knew that Dr. Blinman's role in state government was critical to the

preservation of the archeological history of the State, and his decades of renowned service to our state especially warranted and demanded the Governor's focused attention and oversight to permit him to continue to be able to conduct his virtually-impossible-to-replicate work for our State (the preservation of our critically unique archeological history which is distinctive to all of America), especially when Dr. Blinman's firing was highly publicized and was specifically called into question by the State Legislature (when the Legislature was contemplating Garcia y Griego's reappointment to office) and by many high-profile members of our statewide community.

12.    The Governor's own Human Rights Director, Defendant Kenneth Lucero, sent a letter to the Governor, essentially alerting her to the potentially-illegal nature of Defendant Garcia y Griego's conduct overall, to include her termination of Dr. Blinman.  *See* Motion to Compel Deposition, **Exhibit D**  [EFC 66-6].

13.    While Defendants have maintained there was no investigation into Dr. Blinman's termination, there was, in fact, an investigation into Dr. Blinman's  prior to his termination, as is documented by correspondence in the form of a report from Daniel J. Macke, of Macke Law, to Jacob Maule as the Acting General Counsel for the General Services Department and the Legal Bureau Chief for the Risk Management Division under the Governor.  The Governor's own Legal Bureau Chief undoubtedly would have forewarned the Governor of the risk identified in Mr. Macke's report , "...it is also my opinion that Mr. Blinman is expecting disciplinary action and may be welcoming it. If any disciplinary action is considered, **please note that his allegations made to Human Resources could be deemed protected conduct, which could form the basis of a statutory (WPA) or constitutional (First Amendment) claim**."  *See* Macke's report at p. 10., attached as **Exhibit A** (emphasis supplied).

4

Therefore, the Governor knew, or definitely should have known, about the content and warning of Macke's report, which, notwithstanding the implied mandate to Macke to find a way to exonerate the State from any liability whatsoever, nevertheless made clear that there was indeed a risk of liability for the State's retaliation against Dr. Blinman for his making a protected whistleblower complaint, thereby causing the Governor to be held individually accountable (and jointly liable with the other named Defendants) for the liability of the subject litigation.

14.    Nevertheless, despite Macke's warning to the Defendants of the risk of imposing "disciplinary action" (termination) upon Dr. Blinman, Dr. Blinman's termination letter was deliberately drafted on the Governor's official letterhead, not on the Department's letterhead, thereby indicating and confirming the Governor's personal knowledge and approval of its use for said purpose. *See* Third Amended Complaint, **Exhibit H** [EFC 21-8].

## LEGAL BASIS/ARGUMENT

### Plaintiff Is Entitled to Discovery under Rule 1-026(b)(1) NMRA

#### Relevant

15.    Rule 1-026(B)(1) NMRA permits discovery of "any matter, not privileged, which is **relevant to** the subject matter involved in the pending action." "Relevant" information includes anything reasonably calculated to lead to the discovery of admissible evidence. **The term "relevant" is subject to a broad interpretation, as it is generally used in the discovery context.** *United Nuclear Corp. v. General Atomic Co.*, 1980-NMSC-094, 96 N.M. 155, 629 P.2d 231, appeal dismissed, 451 U.S. 901, 101 S. Ct. 1966, 68 L. Ed. 2d 289 (1981)

16.    **Defendants cannot unilaterally decide the relevance or scope of deposition testimony or production of evidence based upon their own definition of "relevancy."** Such

determinations are for the Court to decide.  The deposition rules intend a liberal pretrial discovery in order to enable the parties to obtain the fullest possible knowledge of the facts (and potential trial evidence) before trial; and, although a trial court's decision to limit discovery will not be disturbed except for an abuse of discretion, **the presumption is in favor of discovery**. The general rule governing discovery leans toward liberality rather than limitations.  *Ruiz v. Southern Pac. Transp. Co.*, 1981-NMCA-094, 97 N.M. 194, 638 P.2d 406.  ***Plaintiff has the right to examine defendant fully and exhaustively; such a right is basically fundamental to our system of jurisprudence, and no court has power to restrict or limit it.***  *Griego v. Grieco*, 1977-NMCA-018, 90 N.M. 174, 561 P.2d 36 (decided before 1979 amendment).

### Reasonably Calculated

17.    The information sought by Plaintiff's counsel is "reasonably calculated" to lead to the discovery of admissible evidence under Rule 1-026(b)(1) NMRA.

18.    Plaintiff seeks to depose the Defendant Governor to obtain information regarding her oversight duties, her decision-making processes, her actual knowledge of these issues and the reasons for her failure to intervene and/or execute her oversight duties with regard to the violations of law alleged in the subject lawsuit.

### Applicable Extraordinary Circumstances

19.    While courts may afford "limited" protection to high-ranking government officials, ***such protections do not apply where the official has personal knowledge of relevant facts***.  *See United States v. Morgan*, 313 U.S. 409, 421 (1941),.

20.    With regard to the "extraordinary circumstances test," Plaintiff asserts:

(1) while Defendant Governor maintains that she had no first-hand knowledge related to Plaintiff's claims, Plaintiff has demonstrated that there are multiple instances proving the Governor's personal knowledge of the relevant facts, including:

    a.    Plaintiff's termination letter (Third Amended Complaint, **Exhibit H** [EFC 21-8]) - although signed by Defendant Gallagher Roberts, the letter was issued specifically on the Governor's own letterhead, thereby implying the Governor's approval of its use for said purpose.

    b.    Defendant Garcia y Griego admitted in her discovery response that "Defendant Garcia y Griego states she discussed Plaintiff's termination with ...Teresa Casados **with the Governor's office**." (Reply In Support of Motion to Compel Deposition, **Exhibit A** [EFC 82-1])

    c.    Multiple critical letters were addressed and sent directly to Defendant Governor Lujan Grisham about Plaintiff's unlawful termination, including letters from prominent members of the administration and many members of the public (Motion to Compel Deposition, **Exhibits D** and **E** [EFC 66-4 and 66-5]), and

    d.    A letter from Co-Defendant Ken Lucero, Human Resources Director, addressed to the Governor, specifically warning her of the illegal discrimination/retaliation being perpetrated against Dr. Blinman by an incompetent Defendant Garcia y Griego (Motion to Compel Deposition, **Exhibit D** [EFC 66-6]).

Each of these facts demonstrates that the Defendant Governor had personal knowledge of Plaintiff's termination and very well knew about Plaintiff's claims and their governmental significance, requiring her to investigate the reasoning for Plaintiff's termination, especially given his over 20 years of acclaimed service to the state of New Mexico. Defendant Lucero's letter to the Governor should have definitely invoked her duty to investigate.

(2) The deposition seeks to unearth factual information regarding the Governor's bases for her failure to investigate the obviously-improper termination of Plaintiff by the

head of the Department of Cultural Affairs, especially in the face of the outcry of literally hundreds of other members of her administration and of the public concerning the mismanagement and discriminatory misconduct of Defendant Garcia y Griego. The deposition of the Defendant Governor is expected to lead to the discovery of relevant facts about the discrimination and retaliation levied against Dr. Blinman, all of which are exclusively within her control and which are expected to show motive, intent, knowledge and proof of actual malice and/or discriminatory intent on the part of all of the individual Defendants, for whom Defendant Governor is ultimately responsible for ensuring that they act within the parameters of the law while serving the state of New Mexico - including all state and federal non-discrimination and non-retaliation laws.

(3) the deposition of the Governor is essential to the Plaintiff's case, as her deposition is relevant to determining:

a. The reasons for her failure to investigate Dr. Blinman's termination (or, if there was an investigation, to determine its scope, its results and the conclusions drawn therefrom);

b. Her oversight role in ensuring compliance with anti-discrimination, anti-whistleblowing and other state and federal laws and her performance of that role in this instance; and,

c. Whether any personal relationships, discriminatory bias or illegal retaliation influenced the decision to terminate Plaintiff and/or the failure of the Governor to perform any investigation or reversal of that decision, especially in view of the Plaintiff's years of service to the State and his overwhelming support from members of her own government and the public made in recognition of his exemplary service to the State.

These matters are central to Plaintiff's claims and are potentially relevant to the improper/illegal activity of all involved state officials, including especially the named Defendants.

(4) the Defendant Governor is the only appropriate party that can provide testimony regarding her motive, intent and knowledge with regard to her decision-making processes and her apparent failure to execute her oversight duties, including especially her failure to investigate and reverse the termination of Dr. Blinman.

21.     Plaintiff has a right to examine a defendant fully and exhaustively.  Such a right is fundamental to our system of jurisprudence.  *See Griego v. Grieco*, 90 N.M. 174, 561 P.2d 36 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977). The discretion granted to the trial court under Rule 26 to issue protective orders must be read in the light of the purpose of these rules, ***which is to permit discovery***.  *See Salitan v. Carrillo*, 69 N.M. 476, 368 P.2d 149 (1961).

**Testimony Cannot Be Obtained From An Alternative Source**

22.      Plaintiff's allegations directly implicate the Governor's knowledge, actions, failures-to-act and potential biases. The Governor's testimony is critical to Plaintiff's claims, as the information to be gleaned from her testimony cannot be obtained from other sources.

**CONCLUSION**

23.     Accordingly, it is clear from these facts and from the Governor's absolute duty of oversight, which was clearly triggered by the above-referenced sequence of events and which called for the Governor's immediate review/action, that the sitting Governor, Michelle Lujan Grisham, should have immediately ordered an investigation of the publicly and internally-opposed termination of Dr. Blinman, a Ph.D., archeologist and long-term protector of the archeological integrity of our

great state, and Plaintiff Dr. Blinman, and the public at large, are now entitled to know why an investigation of his termination by Defendants Garcia y Griego and Gallagher Roberts was not immediately ordered by the Governor, for such failure to order an investigation of Dr. Blinman's publicly-opposed termination under the forgoing questionable circumstances clearly, and likely deliberately, avoided the prompt opportunity to immediately right this wrong; and, therefore, such an apparently deliberate avoidance of duty constitutes palpable wrongdoing committed by a sitting governor - her failure to immediately engage in and perform her duty of oversight, which duty was clearly owed to this esteemed civil servant and highly accomplished caretaker of our state's archeological heritage.

24.    Plaintiff is therefore entitled to question the Governor regarding her perceived duty of oversight required by New Mexico law, regarding why didn't the facts of this case, which were publicly known to her, trigger said duty and whether she did, in fact, **undertake any efforts whatsoever** to investigate possible mismanagement or other wrongdoing engaged in by Defendants Garcia y Griego and/or Gallagher Roberts, to include conducting telephone conversations or meetings with the Defendants Cabinet Secretary and Deputy Cabinet Secretary or any of their subordinates which would have been necessary to investigate the public's (news outlets, state legislature congress men and women, prominent members of the public) expressed concerns about Garcia y Griego's mismanagement of her official duties, to include especially her illegal termination of Plaintiff.  Even if some of these facts only became known to her after Dr. Blinman's termination, the Governor still could have rectified the record, publicly cleared Dr. Blinman's name, terminated Garcia y Griego for her illegal misconduct and even invited Dr. Blinman to return to duty to complete his life's work with acclamation, not shame.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant Governor Michelle Lujan Grisham's Motion for Protective Order and compel Defendant Lujan Grisham to appear and give oral testimony under oath at a time convenient to the parties and counsel, and/or to grant any other and further relief as the Court shall deem to be just and proper.

Respectfully submitted,

THE BENNETT LAW GROUP, LLC

By: _____

Merit Bennett, *Esq*.
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Ph: 505-983-9834 | Fax: 505-983-9836
Email: mb@thebennettlawgroup.com
*Attorney for Plaintiff Dr. Eric Blinman*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of February, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

> SERPE ANDRES, PLLC
> 2540 El Paseo, Suite D
> Las Cruces, New Mexico 88001
> Ph: 575-288-1453
> Hope Pendleton, *Esq*.
> Email: hpendleton@serpeandrews.com
> Cody Rogers, *Esq*.
> Email: crogers@serpeandrews.com
> *Attorneys for State Defendants*
>
> and
>
> Nick Autio. Esq.
> NM Local Government Law, LLC
> 6121 Indian School Road NE, Suite 202
> Albuquerque, New Mexico 87110
> Ph: 505-889-0983
> Email: nick@nmlgl.com
> *Attorney for Defendant Ken Lucero*

 /s/ Merit Bennett
Merit Bennett, *Esq*.
*Attorney for Plaintiff*