IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DR. ERIC BLINMAN,

        Plaintiff,

v.                                    Case No. 1:23-cv-00431-KG-JMR

GOVERNOR MICHELLE LUJAN GRISHAM, *et al.*,

        Defendants.

### PLAINTIFF'S SURREPLY TO THE REPLY IN SUPPORT OF DEFENDANT GOVERNOR MICHELLE LUJAN GRISHAM'S MOTION FOR PROTECTIVE ORDER

**COMES NOW** the Plaintiff, by and through his counsel, Merit Bennett of The Bennett Law Group, LLC, and hereby submits his Surreply to the Reply in Support of Defendant Governor Michelle Lujan Grisham's Motion for Protective Order [ECF 87], as follows:

The Governor is required by law to submit to a deposition in this case, and her Reply raises new and unsubstantiated defenses, which requires rebuttal via the filing of a Surreply.

Defendant asserts in her Reply in Support of Defendant Governor Michelle Lujan Grisham's Motion for Protective Order that "Plaintiff [has] faile[d] to provide any authority or factual basis" to require the Governor to submit to deposition, *i.e.*, Plaintiff has not met "The Extraordinary Circumstances Test," cited by the Governor in: *In re: Office of the Utah Attorney General; Sean Reyers, Petitioners*, 56 F.4th 1254 (10th Cir. 2022):

"The Extraordinary Circumstances Test:"

Other circuits have concluded that high-ranking executive officials should not, absent extraordinary circumstances, be called to testify or be deposed concerning issues relating to their official duties. *E.g., Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (listing cases). The extraordinary circumstances rule "is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses and that, without appropriate limitations,

**EXHIBIT A**

such officials will spend an inordinate amount of time tending to pending litigation." *Id*. (brackets and internal quotation marks omitted).

The extraordinary circumstances test has its genesis in *United States v. Morgan*, 313 U.S. 409, 421-22, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), which involved a deposition of the United States Secretary of Agriculture. Although the deposition had long since occurred by the time the case arrived at the Supreme Court, the Court discouraged depositions of high-ranking officials concerning the reasons for their official actions. *See Id*. at 422, 61 S.Ct. 999. The Morgan decision is routinely cited in decisions employing the extraordinary circumstances test. *E.g., Bogan*, 489 F.3d at 423 (in §1983 action, explaining that, relying on *Morgan*, "courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action"); *Johnson v. Att'y Gen. of N.J.*, No. 12-4850, 2015 WL 4915611, at *2 (D.N.J. Aug. 18, 2015) (in §1983 action, citing *Morgan* for the principle that "current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances" (internal quotation marks omitted)).

The circuits vary on what constitutes extraordinary circumstances, but nearly all of them agree that a party must show at a minimum that the information sought is not obtainable from another source. *See Bogan*, 489 F.3d at 423 (depositions "permitted only where it is shown that other persons cannot provide the necessary information"); *In re U.S. Dep't of Educ.*, 25 F.4th at 702 (movant must show "the information sought ... cannot be obtained in any other way"); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (movant must show "that the necessary information cannot be obtained through other, less burdensome or intrusive means"); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (movant must "establish at a minimum that

EXHIBIT A

the [high-ranking officials] possess information ... which is not obtainable from another source"); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (holding extraordinary circumstances did not exist because information was available from other sources); *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586-87 (D.C. Cir. 1985) (same).

Some circuits require that to qualify as an extraordinary circumstance warranting the deposition of a high-ranking official, the information sought must be "essential" to the plaintiff's case. *E.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 702; *In re United States*, 197 F.3d at 314. The Ninth Circuit observed that this requirement means the information sought must be "absolutely needed." *In re U.S. Dep't of Educ.*, 25 F.4th at 703.

District courts in Colorado and Utah have developed an extraordinary circumstances test based on decisions from other circuits. Under that test, a party seeking the deposition of a high-ranking official must show: "(1) the official has first-hand knowledge related to the claim being litigated; (2) the testimony will likely lead to the discovery of admissible evidence[;] (3) the deposition is essential to the party's case[;] and (4) the information cannot be obtained from an alternative source or via less burdensome means." *E.g.*, *White*, 2014 WL 3373368, at *2; *see also e.g., FTC v. Nudge, LLC*, No. 2:19-cv-00867, 2020 WL 6827682, at *2 (D. Utah Nov. 20, 2020) (same).

**Notwithstanding the Governor's desire to avoid being deposed, her testimony meets all of the tests that she contends must be present in order to require her deposition:**

1. **The information sought by Plaintiff is not obtainable from another source or via less burdensome means, as the Governor has first-hand knowledge of the reasons for her failure to exercise her statutory duty of oversight:**

The information sought by Plaintiff is "Why didn't the Governor exercise her statutory duty of oversight" (*see* Plaintiff's Response to Defendant's Motion For Protective Order, para 5), which

EXHIBIT A

was required by her when she was personally informed ("first-hand knowledge") of the following: (1) a public congressional hearing, airing opposition to the reappointment of Defendant Garcia y Griego to continue to serve as the NMDCA Cabinet Secretary (Response [ECF 83], at para. 11); (2) a letter to the Governor from many high-profile state employees and members of the public, objecting to the termination of Plaintiff by Defendant Garcia y Griego from his position as Director of the State of New Mexico Office of Archeological Studies Division(*Id*., para. 10); and (3) a personal letter to the Governor from Human Resources Director Kenneth Lucero, including, among other things, Mr. Lucero's concern about the legality of Plaintiff's termination by Garcia y Griego (*Id.*, para. 12).   Only the Governor can tell us why, notwithstanding the overwhelming public and private outcry in opposition to Plaintiff's termination, including the letter from Mr. Lucero noting the potential illegality of Dr. Blinman's termination, she did not immediately exercise her statutory duty of oversight in accordance with the New Mexico Constitution and act to either order an investigation of Dr. Blinman's termination or to temporarily reverse and stay his termination until such investigation could be completed - especially when Dr. Blinman's letter of termination was issued on the Governor's letterhead.  *See* Third Amended Complaint, Exhibit H [EFC 21-8].

***Immediately upon the occurrence of any one or more (or certainly of all) of the above events that constituted published public and private knowledge about the circumstances surrounding Plaintiff's termination, which was well known to the Governor of this state, <u>the Governor's statutory duty of oversight was triggered, requiring her to immediately order that an investigation of the propriety/legality of Dr. Blinman's termination be undertaken.</u>  Plaintiff is entitled to know if indeed such investigation was ordered/undertaken, and, if so, what were its results, and, if not undertaken, why not?  Did the Governor's personal relationship with***

4

*Defendant Garcia Y Griego (or with any other influencer) influence the Governor's decision to feign ignorance and thereby irrevocably stain and defame Plaintiff's reputation of exemplary service to our state?*

2. **The information sought is "essential" to the Plaintiff's case and is "absolutely needed":**

If the Governor had exercised her statutory duty of oversight, she would/should have immediately reversed Plaintiff's illegal termination and avoided/minimized the financial/reputational damage inflicted upon Plaintiff. This "information" is vitally essential to Plaintiff's case because, if the Governor had immediately exercised her statutory duty of oversight and reversed Garcia y Griego's illegal termination of Plaintiff (accomplished on the Governor's own letterhead), this lawsuit would never have been filed.

3. **The testimony will likely lead to the discovery of admissible evidence:**

Whatever information is gleaned from the Governor's testimony will be "admissible evidence," as it will be evidence of whether or not she adequately exercised her statutory duty of oversight and, if not, whether her failure to fulfill such duty permitted Garcia y Griego's whistleblower retaliation and illegal discrimination levied against Plaintiff to go unremedied and his consequential public defamation and humiliation to be allowed to occur in the public realm, to include the public press and to include a public letter to the Governor signed by high-profile members of the government and public (*See* Motion to Compel Deposition, Exhibits D and E [EFC 66-4 and 66-5]), all while the Governor watched in silence and refused to say, "Wait a minute, what's wrong with this picture?"

This evidence is relevant to prove Dr. Blinman's claims of gender/race/age discrimination, whistleblower retaliation and violation of New Mexico state law and policy - and the Governor's

**EXHIBIT A**

unfortunate complicity in all of it, because she stood by and watched the defamation and decimation of Dr. Blinman's many years of loyal and irreplaceable service to our state, accomplished with the stroke of a pen on her very own official letterhead, without her raising her oversight hand and simply saying, "I'm hearing from my administration and from the public that I serve that this doesn't seem right - let's investigate this." That is what governors are supposed to do - exercise their duty of oversight, especially when stink is in the air. Dr. Blinman is at least entitled to ask this governor, given all that she was aware of at the time, why she didn't order an investigation, exercise her **duty** of oversight - was it because she didn't want to investigate her friend, Defendant Garcia y Griego? - was it because she knew something was amiss - that something potentially illegal was afoot?

Because the available evidence plainly indicates that the Governor was being informed in real time that something was not right in Garcia y Griego land and that Garcia y Griego's decision to terminate Dr. Blinman may have been illegal (*see* Ken Lucero's letter to the Governor - Motion to Compel Deposition, Exhibit D [EFC 66-6]), the Governor's duty of oversight was definitely triggered, and Dr. Blinman is entitled to know why the Governor failed to exercise her duty, especially when such failure permitted his employment and reputational demise.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant Governor Michelle Lujan Grisham's Motion for Protective Order and compel Defendant Lujan Grisham to appear and give oral testimony under oath at a time convenient to the parties and counsel, and/or to grant any other and further relief as the Court shall deem to be just and proper.

**EXHIBIT A**

Respectfully submitted,

THE BENNETT LAW GROUP, LLC

By: /s/ Merit Bennett
Merit Bennett, *Esq*.
460 St. Michael's Drive, Suite 703
Santa Fe, New Mexico 87505
Ph: 505-983-9834 | Fax: 505-983-9836
Email: mb@thebennettlawgroup.com
*Attorney for Plaintiff Dr. Eric Blinman*

**EXHIBIT A**

**CERTIFICATE OF SERVICE**

I hereby certify that on the ____ day of _____, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    SERPE ANDRES, PLLC
    2540 El Paseo, Suite D
    Las Cruces, New Mexico 88001
    Ph: 575-288-1453
    Hope Pendleton, *Esq*.
    Email: hpendleton@serpeandrews.com
    Cody Rogers, *Esq*.
    Email: crogers@serpeandrews.com
    *Attorneys for State Defendants*

    and

    Nick Autio. Esq.
    NM Local Government Law, LLC
    6121 Indian School Road NE, Suite 202
    Albuquerque, New Mexico 87110
    Ph: 505-889-0983
    Email: nick@nmlgl.com
    *Attorney for Defendant Ken Lucero*

  /s/ Merit Bennett
Merit Bennett, *Esq*.
*Attorney for Plaintiff*

**EXHIBIT A**